DORSEY & WHITNEY LLP
Bruce R. Ewing
51 West 52nd Street
New York, New York 10019
(212) 415-9200

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EGETÜRK WURST-UND FLEISCHWARENFABRIKATION GMBH & CO. KG,<br><br>                              Plaintiff,<br><br>          v.<br><br>SPIRIT FOOD GROUP INC.,<br><br>                              Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Plaintiff Egetürk Wurst-und Fleischwarenfabrikation GmbH & Co. KG ("Plaintiff"), by

its attorneys, Dorsey & Whitney LLP, for its Complaint against Defendant Spirit Food Group

Inc. ("Defendant"), alleges as follows:

### **Introduction**

1.      Plaintiff is the owner of the EGETÜRK trademark and trade name, which it has

used in Germany since 1972, and then elsewhere in Europe and overseas, in connection with a

line of high-quality, halal-certified sausages and prepared meats.  Plaintiff's products are targeted

to consumers of Turkish food products and adhere to traditional Turkish recipes.  The

EGETÜRK trademark is extremely well-known among such consumers, not just in Europe but

worldwide, and the mark symbolizes substantial goodwill and an excellent reputation that belong

exclusively to Plaintiff and that it has spent decades building, through the investment of time, money and hard work.

2. Defendant has chosen to build its business in another way – by misappropriating the EGETÜRK trademark and marketing sausages and prepared meats that are, upon information and belief, targeted to consumers of Turkish food products in the United States, and particularly such consumers residing in the States of New Jersey and New York. Defendant has not even attempted to conceal its blatant theft of Plaintiff's valuable trademark rights, in that it has not just copied the EGETÜRK trademark, but has also hijacked Plaintiff's distinctive logo design, as shown below:

  

**Plaintiff's Logo**                    **Defendant's Logo**

3. Thus, rather than put in the hard work and effort to develop its own trademark and logo, Defendant has misappropriated those of Plaintiff in an attempt to deceive, mislead and confuse the American public into believing that Defendant's products are those of or are authorized by Plaintiff, and/or that Defendant is somehow affiliated or associated with or licensed by Plaintiff.

4. Compounding its misconduct, and unbeknownst to Plaintiff, Defendant obtained a federal trademark registration from the U.S. Patent & Trademark Office (the "PTO") in 2020 for its bogus designation, in the same distinctive logo design created and used by Plaintiff, covering

"cured meats; dried meat; meat; pastrami; salami; sausage meat; sausages; yogurt; yogurt drinks." After learning of this wrongfully obtained registration, Plaintiff filed its own application to register the EGETÜRK trademark, with the same distinctive logo, and petitioned the PTO to cancel the registration that Defendant had improperly obtained. Plaintiff's petition was granted in February 2024 on default, and its application was approved for publication. Yet, incredibly, Defendant has opposed Plaintiff's pending application to register the EGETÜRK trademark and logo it created and has used successfully for more than fifty years, falsely arguing that through its alleged "marketing and sales efforts," Defendant "has established a prominent presence in the marketplace in the United States in its EGETÜRK trademark and has built significant goodwill in the United States." In fact, what Defendant has done is misappropriate the goodwill and strong reputation that Plaintiff has long established among consumers of Turkish food products in both the United States, Europe and elsewhere.

5.    The harm to Plaintiff caused by Defendant's wrongful conduct is manifest. Not only has Defendant's misconduct blocked Plaintiff from launching its EGETÜRK products in the U.S. market, multiple U.S. consumers have contacted Plaintiff in the mistaken belief that Defendant's copycat products are those of Plaintiff. As if this were not enough, some of these U.S. consumers have complained about the quality of Defendant's products, noting that Defendant's imitations taste different – and worse – than Plaintiff's genuine EGETÜRK products. This sort of confusion is highly damaging to the goodwill and reputation that Plaintiff has spent more than fifty years building internationally in its distinctive EGETÜRK trademark, which has long stood for the highest quality standards in every step of production.

6.    Plaintiff has therefore commenced this suit to reclaim control of the trademark it has successfully worked to develop and make well-known over the course of many decades.

**Parties, Jurisdiction and Venue**

7.      Plaintiff Egetürk Wurst-und Fleischwarenfabrikation GmbH & Co. KG is a Gesellschaft mit beschränkter Haftung & Compagnie Kommanditgesellschaft, having its principal place of business at Feldkasseler Weg 5 Köln, Germany 50769.

8.      Upon information and belief, Defendant Spirit Food Group Inc. is a corporation organized under the laws of the State of New Jersey having a principal place of business located at 384 U.S. Highway 46, Parsippany, New Jersey 07054.

9.      This is a civil action in which claims are asserted for false association pursuant to Section 43(a) of the U.S. Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"); unfair competition under N.J. Stat. 56:4-1 and 56:4-2; common law unfair competition in violation of the laws of the States of New Jersey and New York; and for declaratory relief under 28 U.S.C. §§ 2201et seq.

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, as this is an action seeking relief for Defendant's violations of the federal Lanham Act, the parties are citizens of another country and this state, respectively, and the amount in controversy herein exceeds the sum or value of $75,000.  This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a).

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c).

12.     Upon information and belief, this Court has personal jurisdiction over Defendant by virtue of its citizenship in New Jersey, as well as its sale, advertising, and shipment within New Jersey and this District of merchandise bearing designations that violate Plaintiff's rights as described herein; Defendant's solicitation of sales from residents of New Jersey and this District using designations that violate Plaintiff's rights as described herein; and Defendant's

commission of tortious conduct both within and without New Jersey and this District that has caused injury to Plaintiff as described herein.

**Statement of Pleaded Facts**

A.    **Plaintiff's Successful Business and Longstanding Use of the EGETÜRK Trademark**

13.    Plaintiff was founded in 1966 in Germany not long after a laborer named Burhan Öngören became aware that Turkish "guest workers" who were beginning to arrive in the country in increasing numbers were dissatisfied by the relative unavailability of the Turkish food they wanted to eat.  Spotting a strong business opportunity, Öngören learned how to make a Turkish meat product called sucuk – a type of fermented sausage that is a common ingredient in Turkish cuisine – and began selling the product to customers in the area of Cologne, Germany. Öngören's sucuk was specifically manufactured as halal, which means that the product complied with Islamic dietary restrictions.  Today, all of Plaintiff's products sold under the EGETÜRK trademark are halal, and such products meet the highest standards of quality, freshness and hygiene using Plaintiff's strictly controlled manufacturing processes.

14.    Within a year, Öngören's sucuk products had become very popular, so much so that he quit his job as a laborer and devoted himself full time to the business of selling Turkish food products.  While the company sold other types of food products in its early years, the demand in Germany was strongest for prepared meats, and the company decided in the early 1970s to focus on a line of such meat products, not just sucuk.

15.    In 1972, the company adopted the EGETÜRK trademark and trade name for both the company and its line of meat products.  "EGETÜRK" is a coined term that has no meaning in any language and was created by Öngören at a time when Greece and Turkey were in a dispute concerning their respective claims over the Aegean sea.  Öngören was heard to thump on a table

5

and shout "Ege Türk'tür," which translates as "the Aegean is Turkish." To capture that patriotic sentiment, Öngören decided that his own adaptation of this phrase – the inherently distinctive term EGETÜRK – would become the trademark and trade name of his company.

16.    Plaintiff's business grew rapidly in the 1970s based on its selection of high quality raw materials and the adoption of strict production and delivery standards. Plaintiff began exporting meat products from Germany under the EGETÜRK trademark in 1979. Today, Plaintiff sells EGETÜRK products not only in Germany but also in many European countries, including Switzerland and the U.K. – so much so that Plaintiff has a share of over 70% of the European market for halal meat products. The company currently operates a 70,000-square-meter production facility in Cologne, Germany that has a daily production capacity of around 150 tons, making it the largest producer of halal meat in Germany. Plaintiff's EGETÜRK production facility adheres to the strictest manufacturing regulations and certification requirements so as to offer the highest quality and transparency to end consumers.

17.    Plaintiff's annual sales of food products sold under the EGETÜRK trademark exceed 100€ million, and the products are primarily sold in Turkish grocery stores and online. Plaintiff spends substantial amounts of money each year to advertise and promote its meat products bearing the EGETÜRK trademark. Such products are not sold directly into the United States by Plaintiff, but, upon information and belief, it is possible for U.S. consumers to order such goods from distributors of EGETÜRK products located overseas.

18.    The EGETÜRK trademark appears on the packaging for the company's meat products in a distinctive logo design shown below:



The design contains three distinctive visual elements, namely a globe background (to show the international nature of the company's product line), a stylized bull-with-horns design (to connote the company's meat products) and, of course, the distinctive EGETÜRK trademark.

19.     On the packaging for the EGETÜRK products, Plaintiff's EGETÜRK trademark appears at the top center of the products' labels, given the central importance and quality assurance of that trademark to Plaintiff's business, as shown below:




20.     As a result of Plaintiff's extensive sales, advertising and promotion of products under the EGETÜRK trademark, both as a word mark and in the logo design shown above, the mark has become widely recognized among consumers of Turkish food products across Europe,

in parts of the Middle East, the United Kingdom, and in countries with substantial populations of such consumers, including the United States.  Consumers of Turkish food products residing in Europe; consumers of Turkish food products who have traveled to Germany and elsewhere in Europe as well as in parts of the Middle East; and consumers of Turkish food products who have moved or traveled from overseas to the United States, are all familiar with the EGETÜRK trademark and Plaintiff's food products sold under that trademark.  Accordingly, the EGETÜRK trademark has a strong reputation among U.S. consumers of Turkish food products, and it symbolizes the substantial goodwill of the food products sold under such trademark among such U.S. consumers that belongs exclusively to Plaintiff.

21.     In light of the importance of the EGETÜRK trademark to Plaintiff's business, Plaintiff has obtained many trademark registrations for its mark, as reflected in the schedule attached as Exhibit 1.  Plaintiff has also enforced its trademark rights overseas.

**Defendant's Misappropriation of Plaintiff's Valuable Trademark Rights**

22.     Upon information and belief, in approximately 2019, unbeknownst to Plaintiff, Defendant launched a blatant scheme to obtain a free ride and capitalize on the goodwill and positive reputation enjoyed by Plaintiff's high quality food products over many decades that are symbolized by the EGETÜRK trade name and trademark.  Specifically, on information and belief, Defendant began selling a line of meat products targeted to U.S. consumers of Turkish meats under the carbon-copy EGETÜRK designation whose ongoing use this lawsuit seeks to prevent.

23.     Upon information and belief, Defendant's imitative products have been sold primarily in geographic areas with significant numbers of U.S. consumers of Turkish descent, including in New Jersey and in New York.  According to U.S. census data, approximately

250,000 respondents to the 2023 American Community Survey conducted by the U.S. Census Bureau reported that they are of Turkish descent, B04006 - Census Bureau Tables, although the Turkic community of U.S. residents whose origins are in countries other than Turkey is believed to be much larger, as high as one million. *See* The Turkish American Community. So, Defendant had a strong economic incentive to brand its unauthorized products with a trademark that is well-known to members of this community, its target market: EGETÜRK.

24. Defendant's conscious decision to misappropriate the substantial goodwill and reputation that Plaintiff has spent decades building is best exemplified by its adoption of a logo design for its false EGETÜRK designation that is ***identical*** to Plaintiff's distinctive logo design, as shown below:



25. In addition, the placement and color scheme for this wrongfully copied logo on Defendant's meat products are identical to what Plaintiff employs on its genuine EGETÜRK products, as the images of Defendant's products shown below establish:

 

26.    Based on these pictures that are worth more than a thousand words, it is evident that Defendant has pirated Plaintiff's valuable rights in the EGETÜRK trademark and logo design, thereby building a business on deception and misleading the relevant public into believing that Defendant's products are either Plaintiff's genuine EGETÜRK products, or that Defendant's products are somehow associated with, or authorized, sponsored, or approved by, Plaintiff.

27.    And Defendant's efforts have succeeded.  Since 2020, multiple U.S. consumers have communicated their mistaken belief that Defendant's products are genuine EGETÜRK products from Plaintiff.  Most problematic for Plaintiff, overseas visitors to the U.S. have purchased Defendant's imitation EGETÜRK products and, upon their return home, contacted Plaintiff to voice their dismay at what they considered to be the different taste and inferior quality of Defendant's products, which appear to be manufactured with different ingredients from Plaintiff's genuine EGETÜRK products.  These communications demonstrate the concrete,

non-speculative reputational injury that Plaintiff is suffering and is likely to suffer as a result of Plaintiff's wrongful conduct.

**Defendant's Efforts to Block Plaintiff From Registering
the EGETÜRK Trademark With the PTO and Entering the U.S. Market**

28.     Plaintiff became aware of Defendant's bogus EGETÜRK designation in approximately 2020, and shortly thereafter also learned that Defendant had actually obtained a federal registration from the PTO for that designation, issued as U.S. Reg. No. 6,048,019 for the word EGETÜRK and the imitative logo shown in paragraph 24, *supra*.  That registration, covering "cured meats; dried meat; meat; pastrami; salami; sausage meat; sausages; yogurt; yogurt drinks" issued in May 2020 after Defendant reported to the PTO that it had first used its alleged trademark in U.S. commerce in August 2019.

29.     Plaintiff filed its own application with the PTO to register the actual EGETÜRK trademark in February 2022 for "sausages and prepared meat products."  That application was refused because of Defendant's previously issued registration.  Accordingly, Plaintiff sent a communication to Defendant in July 2023 demanding that it cease using the EGETÜRK trademark in the United States and surrender its improperly obtained federal trademark registration for cancellation.  Although Defendant's counsel promptly acknowledged receipt of this correspondence, no substantive response from Defendant was ever received.

30.     Accordingly, Plaintiff filed a petition with the PTO's Trademark Trial and Appeal Board (the "TTAB") seeking cancellation of Defendant's wrongful registration in November 2023.  Defendant declined to respond to that petition, and the petition was therefore granted on default in February 2024.  Thereafter, Plaintiff's February 2022 trademark application was

approved for publication by the PTO, as Defendant's 2020 registration was no longer blocking registration of the EGETÜRK trademark by Plaintiff.

31.    However, in September 2024, Defendant filed a new application to register the EGETÜRK trademark it falsely claimed to own, which was assigned Serial No. 98737305, as well as a notice of opposition to Plaintiff's trademark application, in a proceeding designated as No. 91293903 by the TTAB.  In its bad-faith 2024 application, Defendant claimed under oath that it believed it was entitled to exclusive use of the EGETÜRK trademark in the United States – a materially false statement that was made with the intent to deceive the PTO.

32.    Meanwhile, in Defendant's 2024 notice of opposition, it pleaded that it had "continually used its EGETURK mark in commerce in the United States at least as early as August 1, 2019," and had "spent substantial amount [sic] of time, money and effort in developing its EGETURK mark in connection with meats, cured meats, dried meats, sausage meat and other food products and in marketing said goods in the United States."  Further, Defendant pleaded that through its "marketing efforts and sales, [Defendant] has established a prominent presence in the marketplace in the United States in its EGETURK trademark and has built significant goodwill in the United States."

33.    Defendant also claimed in its notice of opposition that it was unaware of Plaintiff's filing of a cancellation petition in 2023 – a highly dubious contention given Plaintiff's transmission of a demand letter months before that Defendant's counsel acknowledged receiving – and failed to defend that proceeding for that reason.  Defendant went on to contend in its notice of opposition that: (i) the parties' marks were "identical in sound, appearance and commercial impression"; (ii) the channels of trade for the parties' goods were "overlapping" or "substantially

similar"; and (iii) the parties' goods would be marketed and distributed to "the same potential

purchasers in the same relevant markets."  In sum, according to Defendant:

> Due to the similarity of the respective marks, the overlapping or related nature of
> the goods and services, and the overlapping nature of the respective markets,
> channels of distribution, and/or consumers, [Defendant] believes that there will be
> a likelihood of confusion if [Plaintiff] is permitted to register [Plaintiff's genuine
> EGETÜRK trademark] for use in connection with the goods specified in said
> application.

Since Defendant's notice of opposition was filed, Plaintiff has answered, and discovery has

begun, although no discovery responses have been exchanged between the parties.

34.    Based on the admissions contained in Defendant's TTAB notice of opposition

filed in 2024, there can be no question that Plaintiff and U.S. consumers of Turkish food

products are likely to be harmed through the ongoing use of Defendant's bogus EGETÜRK

designation, such that the only question to be resolved is whether Plaintiff possesses protectable

rights in its EGETÜRK trademark in the United States.  Defendant's willful, malicious adoption

of an imitative EGETÜRK designation that not only misappropriates Plaintiff's trademark itself,

but its distinctive logo design, is powerful evidence of the goodwill and reputation that Plaintiff's

EGETÜRK trademark possesses in the United States among consumers of Turkish food

products.

35.    Further, Defendant's renewed, false claims that it, not Plaintiff, owns the U.S.

rights in the EGETÜRK trademark for meat and related products is blocking Plaintiff from

implementing plans to launch genuine EGETÜRK products in the U.S. market.  Plaintiff has

regularly received inquiries from U.S. food distributors and others in the food industry about the

possibility of bringing Plaintiff's highly regarded EGETÜRK meat products to the U.S. market.

For a variety of reasons, Plaintiff has been reluctant to undertake such expansion, although it has never ruled out that possibility.

36.    However, Plaintiff has decided that the time is right to begin sales of EGETÜRK products in the U.S., and it is in active discussions with a potential U.S. distributor concerning such distribution.  However, until the current actual controversy between the parties as to the ownership in the U.S. of the EGETÜRK trademark is resolved, such expansion cannot proceed. As a result, Plaintiff is suffering concrete, non-speculative harm from Defendant's wrongful use in the U.S. market of a pirated version of Plaintiff's EGETÜRK trademark that has been and is being used to mislead consumers, to Plaintiff's detriment.

37.    Defendant's activities have caused and will continue to cause irreparable harm to Plaintiff and to the substantial goodwill embodied in Plaintiff's EGETÜRK trademark, and said acts will continue unless restrained by this Court.  Specifically, Defendant's acts are all part of an intentional scheme to free ride and trade on the goodwill of Plaintiff's business and to deceive the public into believing that Defendant's products are Plaintiff's products, are derived from the same source as Plaintiff's products, are of the same quality and character as Plaintiff's products, or in the least, are affiliated, sponsored, endorsed, approved or associated in some way with Plaintiff or its products.

38.    Defendant's aforesaid actions have damaged, and unless enjoined will continue to damage, Plaintiff's reputation, and foreclose and impair any future sales by Plaintiff of its EGETÜRK products in the United States.  In sum, Plaintiff has suffered, and will continue to suffer, not only reputational injury caused directly by Defendant's wrongful conduct, but will suffer concrete, non-speculative economic injury also caused directly by Defendant's wrongful conduct if it is unable to market genuine EGETÜRK products in the United States.

39.     Plaintiff has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

### False Association
### (Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

40.     Plaintiff restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

41.     Plaintiff has used the EGETÜRK trade name and trademark for more than fifty years for its company and its line of food products.  EGETÜRK is a coined, inherently distinctive mark for meat products and, consequently, is a valid and legally protectable trademark and trade name.

42.     Plaintiff adopted the EGETÜRK mark more than fifty years ago and properly registered that mark in Germany and multiple overseas jurisdictions.

43.     Plaintiff's EGETÜRK mark is well-known among consumers of Turkish food products around the world, including in the United States and in the States of New Jersey and New York.  Defendant's adoption of an identical EGETÜRK designation, as well as an identical logo design, demonstrates that Plaintiff's EGETÜRK trademark has achieved substantial recognition and possesses secondary meaning among such consumers in the United States.

44.     By virtue of its longstanding use of the EGETÜRK trade name and trademark with high quality halal meat products, Plaintiff has established a strong reputation among consumers of Turkish food products around the world, including in the United States and in the States of New Jersey and New York.  The EGETÜRK trade name and trademark symbolize the substantial goodwill Plaintiff has established among such consumers over many decades, and such goodwill is a valuable asset belonging exclusively to Plaintiff.

45.     Defendant is using an identical EGETÜRK designation to sell meat products targeted toward U.S. consumers of Turkish food products in a deliberate, bad-faith attempt to create confusion because consumers in the United States will assume that Defendant's products are actually those of Plaintiff, the well-known manufacturer of products under the EGETÜRK mark, or are licensed, approved or associated with Plaintiff and its EGETÜRK products.

46.     By adopting not just an identical EGETÜRK designation, but an identical logo design, Defendant has demonstrated its bad-faith intent to profit from consumers' confusion and to capitalize on the goodwill generated by Plaintiff's genuine EGETÜRK trademark.

47.     Defendant's inferior products and the confusion they have caused and are likely to keep causing among consumers making purchases in the U.S. have directly harmed and are likely to directly harm the goodwill Plaintiff has worked hard to generate and, in turn, impact future sales of genuine EGETÜRK products that Plaintiff plans to offer in this District and in the United States. Moreover, Plaintiff is foreclosed from selling its products in the United States as long as Defendant is asserting a bogus claim of rights in the EGETÜRK trademark.

48.     The foregoing acts of Defendant constitute a willful violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## SECOND CLAIM FOR RELIEF

### Unfair Competition
### (N.J. Stat. 56:4-1 and 56:4-2)

49.     Plaintiff restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

50.     Plaintiff has used the EGETÜRK trade name and trademark for more than fifty years for its company and its line of food products.  EGETÜRK is a coined, inherently

distinctive mark for meat products and, consequently, is a valid and legally protectable trademark and trade name.

51.     Plaintiff adopted the EGETÜRK mark more than fifty years ago and properly registered that mark in Germany and multiple overseas jurisdictions.

52.     Plaintiff's EGETÜRK mark is well-known among consumers of Turkish food products around the world, including in the United States and in the State of New Jersey. Defendant's adoption of an identical EGETÜRK designation, as well as an identical logo design, demonstrates that Plaintiff's EGETÜRK trademark has achieved substantial recognition and possesses secondary meaning among such consumers in the United States.

53.     By virtue of its longstanding use of the EGETÜRK trade name and trademark with high quality halal meat products, Plaintiff has established a strong reputation among consumers of Turkish food products around the world, including in the United States and in the State of New Jersey.  The EGETÜRK trade name and trademark symbolize the substantial goodwill Plaintiff has established among such consumers over many decades, and such goodwill is a valuable asset belonging exclusively to Plaintiff.

54.     Defendant is using an identical EGETÜRK designation to sell meat products targeted toward U.S. consumers of Turkish food products in a deliberate, bad-faith attempt to create confusion because consumers in the United States will assume that Defendant's products are actually those of Plaintiff, the well-known manufacturer of products under the EGETÜRK mark, or are licensed, approved or associated with Plaintiff and its EGETÜRK products.

55.     By adopting not just an identical EGETÜRK designation, but an identical logo design, Defendant has demonstrated its bad-faith intent to profit from consumers' confusion and to capitalize on the goodwill generated by Plaintiff's genuine EGETÜRK trademark.

56.     Defendant's inferior products and the confusion they have caused and are likely to keep causing among consumers making purchases in New Jersey have directly harmed and are likely to directly harm the goodwill Plaintiff has worked hard to generate and, in turn, impact future sales of genuine EGETÜRK products that Plaintiff plans to offer in this District and in the United States. Moreover, Plaintiff is foreclosed from selling its products in the United States as long as Defendant is asserting a bogus claim of rights in the EGETÜRK trademark.

57.     The foregoing acts of Defendant maliciously, willfully and in bad faith misappropriate the trademark, brand, reputation and goodwill that Plaintiff exclusively possesses in the EGETÜRK trademark, in violation of N.J. Stat. 56:4 and 56:4-2.

## THIRD CLAIM FOR RELIEF

### Unfair Competition
### (New Jersey Common Law)

58.     Plaintiff restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

59.     Plaintiff has used the EGETÜRK trade name and trademark for more than fifty years for its company and its line of food products.  EGETÜRK is a coined, inherently distinctive mark for meat products and, consequently, is a valid and legally protectable trademark and trade name.

60.     Plaintiff adopted the EGETÜRK mark more than fifty years ago and properly registered that mark in Germany and multiple overseas jurisdictions.

61.     Plaintiff's EGETÜRK mark is well-known among consumers of Turkish food products around the world, including in the United States and in the State of New Jersey. Defendant's adoption of an identical EGETÜRK designation, as well as an identical logo design,

demonstrates that Plaintiff's EGETÜRK trademark has achieved substantial recognition and possesses secondary meaning among such consumers in the United States.

62.     By virtue of its longstanding use of the EGETÜRK trade name and trademark with high quality halal meat products, Plaintiff has established a strong reputation among consumers of Turkish food products around the world, including in the United States and in the State of New Jersey.  The EGETÜRK trade name and trademark symbolize the substantial goodwill Plaintiff has established among such consumers over many decades, and such goodwill is a valuable asset belonging exclusively to Plaintiff.

63.     Defendant is using an identical EGETÜRK designation to sell meat products targeted toward U.S. consumers of Turkish food products in a deliberate, bad-faith attempt to create confusion because consumers in the United States will assume that Defendant's products are actually those of Plaintiff, the well-known manufacturer of products under the EGETÜRK mark, or are licensed, approved or associated with Plaintiff and its EGETÜRK products.

64.     By adopting not just an identical EGETÜRK designation, but an identical logo design, Defendant has demonstrated its bad-faith intent to profit from consumers' confusion and to capitalize on the goodwill generated by Plaintiff's genuine EGETÜRK trademark.

65.     Defendant's inferior products and the confusion they have caused and are likely to keep causing among consumers making purchases in the New Jersey have directly harmed and are likely to directly harm the goodwill Plaintiff has worked hard to generate and, in turn, impact future sales of genuine EGETÜRK products that Plaintiff plans to offer in this District and in the United States. Moreover, Plaintiff is foreclosed from selling its products in the United States as long as Defendant is asserting a bogus claim of rights in the EGETÜRK trademark.

66. The foregoing acts of Defendant maliciously, willfully and in bad faith misappropriate the trademark, brand, reputation and goodwill that Plaintiff exclusively possesses in the EGETÜRK trademark, in violation of the common law of the State of New Jersey.

## FOURTH CLAIM FOR RELIEF
### Unfair Competition
### (New York Common Law)

67. Plaintiff restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

68. Plaintiff has used the EGETÜRK trade name and trademark for more than fifty years for its company and its line of food products. EGETÜRK is a coined, inherently distinctive mark for meat products and, consequently, is a valid and legally protectable trademark and trade name.

69. Plaintiff adopted the EGETÜRK mark more than fifty years ago and properly registered that mark in Germany and multiple overseas jurisdictions.

70. Plaintiff's EGETÜRK mark is well-known among consumers of Turkish food products around the world, including in the United States and in the State of New York. Defendant's adoption of an identical EGETÜRK designation, as well as an identical logo design, demonstrates that Plaintiff's EGETÜRK trademark has achieved substantial recognition and possesses secondary meaning among such consumers in the United States.

71. By virtue of its longstanding use of the EGETÜRK trade name and trademark with high quality halal meat products, Plaintiff has established a strong reputation among consumers of Turkish food products around the world, including in the United States and in the State of New York. The EGETÜRK trade name and trademark symbolize the substantial

goodwill Plaintiff has established among such consumers over many decades, and such goodwill is a valuable asset belonging exclusively to Plaintiff.

72.    Defendant is using an identical EGETÜRK designation to sell meat products targeted toward U.S. consumers of Turkish food products in a deliberate, bad-faith attempt to create confusion because consumers in the United States will assume that Defendant's products are actually those of Plaintiff, the well-known manufacturer of products under the EGETÜRK mark, or are licensed approved or associated with Plaintiff and its EGETÜRK products.

73.    By adopting not just an identical EGETÜRK designation, but an identical logo design, Defendant has demonstrated its bad-faith intent to profit from consumers' confusion and to capitalize on the goodwill generated by Plaintiff's genuine EGETÜRK trademark.

74.    Defendant's inferior products and the confusion they have caused and are likely to keep causing among consumers making purchases in New York have directly harmed and are likely to directly harm the goodwill Plaintiff has worked hard to generate and, in turn, impact future sales of genuine EGETÜRK products that Plaintiff plans to offer in this District and in the United States. Moreover, Plaintiff is foreclosed from selling its products in the United States as long as Defendant is asserting a bogus claim of rights in the EGETÜRK trademark.

75.    The foregoing acts of Defendant willfully, maliciously and in bad faith misappropriate the trademark, brand, reputation and goodwill that Plaintiff exclusively possesses in the EGETÜRK trademark, in violation of the common law of the State of New York.

**FIFTH CLAIM FOR RELIEF**
**Declaratory Judgment**
**(28 U.S.C. § § 2201 et seq.)**

76.    Plaintiff restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

77.    Defendant has asserted that it is the owner of the EGETÜRK trademark for use in connection with food products in the United States, with rights superior to those of Plaintiff.  As a result, there is substantial uncertainty as to whether Plaintiff can enter the U.S. market with its genuine EGETÜRK food products.  This uncertainty is heightened by the fact that Defendant has filed a notice of opposition with the PTO seeking to block Plaintiff from registering its genuine EGETÜRK trademark with food products.

78.    An actual, justiciable controversy exists because there is a dispute between the parties concerning which of them owns superior rights in the EGETÜRK trademark in the United States for use in connection with food products and, as between them, which of them is entitled to registration of the EGETÜRK trademark in the United States in connection with food products.

79.    Accordingly, Plaintiff seeks a declaratory judgment under the U.S. Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, that: (i) it is the exclusive owner, as between the parties, of all U.S. rights in the EGETÜRK trademark for use in connection with food products; (ii) Plaintiff is entitled to register with the PTO the EGETÜRK trademark for use in connection with food products, such that Defendant's opposition proceeding on file with the Trademark Trial and Appeal Board, No. 91293903, should be dismissed; and (iii) Defendant is not entitled to register the EGETÜRK trademark for use in connection with food products, such that Defendant's pending application on file with the PTO, Serial No. 98737305, should be refused.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in its favor and against Defendant providing the following relief:

1.      Permanently enjoining and restraining Defendant, its officers, agents, servants, employees, attorneys, successors or assigns, and all persons or entities acting in concert or participation with them or any of them, from the offering for sale, sale, importation, manufacture, distribution, labeling, packaging, advertising and/or promotion in the United States of any goods that bear:

a.      Plaintiff's EGETÜRK trademark and trade name, any variation thereof, or any other designation that is confusingly similar to Plaintiff's EGETÜRK trademark and trade name, including but not limited to any confusingly similar logo design, even if Plaintiff's EGETÜRK trademark is omitted from such logo design; and

b.      any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendant or its goods are the same as or in any way associated or affiliated with, or related to, Plaintiff or Plaintiff's EGETÜRK food products, or that Defendant's products derive from a common source.

2.      Requiring Defendant to pay over to Plaintiff all damages sustained by Plaintiff, and all profits earned by Defendant from its violative conduct under 15 U.S.C. § 1117(a), N.J. Stat. 56:4-2, and the common law of New Jersey and New York.

3.      Enhancing the amount of damages and/or profits awarded to Plaintiff as permitted under 15 U.S.C. § 1117(a) and N.J. Stat. 56:4-2.

4.      Awarding Plaintiff its reasonable attorneys' fees, costs, disbursements and pre-judgment interest pursuant to 15 U.S.C. § 1117(a), and other applicable law, on the grounds that this is an exceptional case.

5.      Awarding Plaintiff punitive damages on its New Jersey and New York State claims for unfair competition.

6.      Declaring, under 28 U.S.C. §§ 2201 *et seq.*, that: (i) Plaintiff is the exclusive owner, as between the parties, of all U.S. rights in the EGETÜRK trademark for use in connection with food products; (ii) Plaintiff is entitled to register with the United States Patent and Trademark Office the EGETÜRK trademark for use in connection with food products, such that Defendant's opposition proceeding on file with the Trademark Trial and Appeal Board, No. 91293903, should be dismissed; and (iii) Defendant is not entitled to register the EGETÜRK trademark for use in connection with food products, such that Defendant's pending application on file with the PTO, Serial No. 98737305, should be refused.

7.      Granting Plaintiff such other and further relief as this Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury on all of their claims so triable.

Dated: January 16, 2025                                         DORSEY & WHITNEY LLP

By:  /s/ *Bruce R. Ewing*
    Bruce R. Ewing
    51 West 52nd Street
    New York, New York 10019
    (212) 415-9200

*Attorneys for Plaintiff Egetürk*
*Wurst-und Fleischwarenfabrikation*
*GmbH & Co. KG*